IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| ASHLEY COOPER, | ) | Civ. No. 22-00275 HG-RT |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| VIGOR MARINE, LLC; VIGOR | ) | |
| INDUSTRIAL, LLC; BRANDSAFWAY | ) | |
| INDUSTRIES, LLC; BRANDSAFWAY, | ) | |
| LLC; BRANDSAFWAY SERVICES, LLC; | ) | |
| BRANDSAFWAY SOLUTIONS, LLC; | ) | |
| INTERNATIONAL MARINE AND | ) | |
| INDUSTRIAL APPLICATORS, LLC; | ) | |
| INDUSTRIAL VACUUM EQUIPMENT | ) | |
| CORPORATION; INDUSTRIAL VACUUM | ) | |
| SALES LLC; INDUSTRIAL VACUUM | ) | |
| INC.; PACIFIC EQUIPMENT SUPPLY | ) | |
| LLC; PACIFIC EQUIPMENT LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**ORDER DENYING DEFENDANT INTERNATIONAL MARINE AND INDUSTRIAL APPLICATORS, LLC'S MOTION FOR SUMMARY JUDGMENT (ECF No. 129)**

On August 21, 2021, Plaintiff Ashley Cooper was employed to conduct industrial painting and related repair work for Defendant International Marine and Industrial Applicators, LLC, aboard the U.S.S. *William P. Lawrence*, a U.S. Navy vessel.  The vessel was located at a graving dock at the Pearl Harbor Naval Shipyard in Hawaii.

Plaintiff asserts that she was injured when her right arm was sucked into an industrial vacuum while she was working aboard the vessel.

1

Plaintiff filed her lawsuit seeking damages for her injuries against various sets of entities:

(1)   DEFENDANTS VIGOR MARINE, LLC and VIGOR INDUSTRIAL, LLC, the general contractors on the job site where Plaintiff was injured;

(2)   DEFENDANTS BRANDSAFWAY INDUSTRIES, LLC; BRANDSAFWAY, LLC; BRANDSAFWAY SERVICES, LLC; and BRANDSAFWAY SOLUTIONS, LLC, the subcontractors on the job site where Plaintiff was injured;

(3)   DEFENDANT INTERNATIONAL MARINE AND INDUSTRIAL APPLICATIONS, LLC, Plaintiff's employer;

(4)   DEFENDANTS INDUSTRIAL VACUUM EQUIPMENT CORPORATION, INDUSTRIAL VACUUM SALES, LLC, and INDUSTRIAL VACUUM INC., who Plaintiff asserts manufactured the vacuum that caused her injuries; and

(5)   DEFENDANTS PACIFIC EQUIPMENT SUPPLY LLC and PACIFIC EQUIPMENT LLC, which Plaintiff claims sold the vacuum to her employer Defendant International Marine and Industrial Applicators, LLC.

Plaintiff's claims against her employer Defendant International Marine and Industrial Applicators, LLC ("Defendant IMIA"), are as follows:

(1)   a Jones Act Negligence claim;

(2)   a Jones Act claim for Maintenance, Cure, and Unearned Wages; and

(3)   Punitive Damages.

The causes of actions brought against Defendant IMIA are premised on Plaintiff demonstrating that she was a "seaman" injured in the course of her employment pursuant to the Jones Act.

2

The Court previously ruled on Defendant IMIA's Motion to Dismiss the claims against it on the basis that Plaintiff was not a "seaman" within the meaning of the Jones Act.

The Court granted the Motion to Dismiss with leave to amend for Plaintiff to assert additional facts in support of her status as a seaman pursuant to the Jones Act.

On September 5, 2023, Plaintiff filed a Second Amended Complaint, providing additional facts in support of her claims that she is a seaman and asserting she is entitled to damages pursuant to the Jones Act against Defendant IMIA.

Plaintiff was given additional leave to amend to file the Third Amended Complaint to add new claims against the manufacturer and seller of the vacuum that she claims caused her injuries.  The Third Amended Complaint did not alter her claims against Defendant IMIA.

Before the Court now is Defendant IMIA's Motion for Summary Judgment as to all claims against it.  Defendant IMIA argues that Plaintiff was not a "seaman" for purposes of the Jones Act. Defendant IMIA also argues that even if Plaintiff was a seaman, IMIA is entitled to summary judgment on Plaintiff's Jones Act claims against it.

Defendant International Marine and Industrial Applicators, LLC's Motion for Summary Judgment (ECF No. 129) is **DENIED.**

There are genuine issues of material fact as to whether Plaintiff was a "seaman" within the meaning of the Jones Act for purposes of her claims against Defendant International Marine and

3

Industrial Applicators, LLC.  There are also genuine issues of material fact as to Plaintiff's Jones Act Negligence, Maintenance and Cure, and Punitive Damages claims against Defendant IMIA.

## PROCEDURAL HISTORY

On May 6, 2022, Plaintiff filed a Complaint in the Circuit Court of the First Circuit, State of Hawaii.  (ECF No. 1-3).

On June 17, 2022, Defendants removed the Complaint to the United States District Court for the District of Hawaii.  (ECF No. 1).

On February 24, 2023, Plaintiff filed the First Amended Complaint.  (ECF No. 36).

On May 22, 2023, Defendants International Martine and Industrial Applicators, LLC; IMIA, LLC; IMIA Holdings, Inc.; and Doug Eiss filed a Motion to Dismiss.  (ECF No. 67).

On July 18, 2023, the Court held a hearing on the Motion to Dismiss.  (ECF No. 76).

On July 19, 2023, the Court issued the ORDER GRANTING DEFENDANTS INTERNATIONAL MARINE AND INDUSTRIAL APPLICATORS, LLC; IMIA, LLC; IMIA HOLDINGS, INC.; AND DOUG EISS'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM WITH LEAVE TO AMEND.  (ECF No. 77).

On September 5, 2023, Plaintiff filed the SECOND AMENDED COMPLAINT.  (ECF No. 88).

On March 1, 2024, Defendant International Marine and Industrial Applicators, LLC filed a Motion for Summary Judgment

and Concise Statement of Facts in support.  (ECF Nos. 129 and 130).

On March 5, 2024, the Court issued the briefing schedule. (ECF No. 131).

On March 7, 2024, Plaintiff filed an Unopposed Motion to Extend Briefing Schedule.  (ECF No. 132).

On March 12, 2024, the Court issued a Minute Order granting the Motion to Extend Briefing Schedule, in part.  (ECF No. 134). The Court continued the hearing to April 23, 2024.  (Id.)

On March 14, 2024, the Magistrate Judge granted Plaintiff's request to file a Third Amended Complaint.  (ECF Nos. 135, 146).

On March 25, 2024, Plaintiff filed her Opposition and Concise Statements of Facts in Opposition to Defendant International Marine and Industrial Applicators, LLC's Motion for Summary Judgment.  (ECF Nos. 137, 138, 139).

On March 26, 2024, the Brandsafway Defendants filed a Statement of No Position to the Motion for Summary Judgment. (ECF No. 140).

On April 1, 2024, Defendant International Marine and Industrial Applicators, LLC filed its Reply and Objections to Plaintiff's Opposition.  (ECF Nos. 142, 143, 144).

On April 10, 2024, Plaintiff filed the THIRD AMENDED COMPLAINT.  (ECF No. 150).

On April 23, 2024, the Court held a hearing on Defendant International Marine and Industrial Applicators, LLC's Motion for Summary Judgment.  (ECF No. 166).

## **BACKGROUND**

The Parties disagree as to the majority of the material facts in this case.

### **Plaintiff and Defendant IMIA do agree to the following facts**:

In 2021, Plaintiff Ashley Cooper was employed by Defendant IMIA and worked full-time as an industrial painter. (Declaration of Plaintiff Ashley Cooper at ¶ 2, attached to Pl.'s Concise Statement of Facts ("CSF"), ECF No. 137-1).

On August 21, 2021, Plaintiff was at work on board the USS *William P. Lawrence* (the "Vessel"), which was located at Joint Base Pearl Harbor-Hickam. (Id.) On the same date, Plaintiff was injured while on the Vessel. (Injury Report, attached as Ex. B to Def.'s CSF, ECF No. 130-3).

Plaintiff was hospitalized following her injury on August 21, 2021. She returned to work for Defendant IMIA from September 6, 2021 until October 4, 2021, performing light duty tasks at the job site. (Deposition of Def. IMIA General Manager Douglas Eiss ("Eiss Depo.") at p. 12, attached as Ex. A to Def.'s CSF, ECF No. 130-2; Deposition of Plaintiff Ashley Cooper ("Cooper Depo.") at pp. 101-02, attached as Ex. A to Pl.'s Sur-Reply, ECF No. 153-2).

Plaintiff returned to disability status on October 28, 2021. (Cooper Depo. at p. 103, attached as Ex. A to Pl.'s Sur-Reply, ECF No. 153-2).

Defendant IMIA furnished Plaintiff with some disability pay benefits since her August 21, 2021 injury. (Id. at p. 15).

6

**Plaintiff and Defendant IMIA disagree as to other material facts including, but not limited to, the following**:

(1) the nature and circumstances of Plaintiff's employment with Defendant IMIA and other entities;

(2) the scope of Plaintiff's job duties with Defendant IMIA;

(3) the instruction and the supervision of Plaintiff by Defendant IMIA and other entities, including the United States Navy;

(4) Plaintiff's employment history with IMIA and other entities, including her time working aboard other vessels;

(5) the instruction and supervision of Plaintiff by other IMIA employees;

(6) the use of equipment aboard the Vessel;

(7) the nature and circumstances of how Plaintiff sustained her injuries on August 21, 2021;

(8) the extent of Plaintiff's injuries;

(9) the actions by Defendant IMIA following the injury on August 21, 2021, including the investigation into the accident and the reporting of the accident;

(10) the use of industrial vacuums by IMIA employees and whether there had been other incidents involving industrial vacuums operated by Defendant IMIA employees;

(11) the relationship between Defendant IMIA and Plaintiff's prior employer Craft and Technical Solutions ("CTS"), including the supervision of Plaintiff by Defendant IMIA while she was employed with CTS; and

(12) the relationship and business interests of Defendant IMIA's General Manager Douglas Eiss and other Defendants in the case including Defendants Pacific Equipment Supply LLC and Pacific Equipment LLC.

## STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  To defeat summary judgment "there must be sufficient 'evidence that a reasonable jury could return a verdict for the nonmoving party.'" Nidds v. Schindler Elevator Corp., 113 F.3d 912, 916 (9th Cir. 1997) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

The moving party has the initial burden of "identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The moving party, however, has no burden to negate or disprove matters on which the opponent will have the burden of proof at trial.  The moving party need not produce any evidence at all on matters for which it does not have the burden of proof.  Celotex, 477 U.S. at 325.  The moving party must show, however, that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law.  That burden is met by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case. Id.

If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence of probative evidence tending to support its legal theory. Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 282 (9th Cir. 1979).  The opposing party must present admissible evidence showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(c); Brinson v. Linda Rose Joint Venture, 53 F.3d 1044, 1049 (9th Cir. 1995).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Nidds, 113 F.3d at 916 (quoting Anderson, 477 U.S. at 249-50).

The court views the facts in the light most favorable to the non-moving party.  State Farm Fire & Cas. Co. v. Martin, 872 F.2d 319, 320 (9th Cir. 1989).  Opposition evidence may consist of declarations, admissions, evidence obtained through discovery, and matters judicially noticed.  Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 324.  The opposing party cannot, however, stand on its pleadings or simply assert that it will be able to discredit the movant's evidence at trial.  Fed. R. Civ. P. 56(e); T.W. Elec. Serv., 809 F.2d at 630.  The opposing party cannot rest on mere allegations or denials.  Fed. R. Civ. P. 56(e); Gasaway v. Nw. Mut. Life Ins. Co., 26 F.3d 957, 959-60 (9th Cir. 1994).  "When the nonmoving party relies only on its own affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact."  Hansen v. U.S., 7 F.3d 137, 138 (9th Cir. 1993); see also Nat'l

9

Steel Corp. v. Golden Eagle Ins. Co., 121 F.3d 496, 502 (9th Cir. 1997).

## ANALYSIS

### I.   Evidentiary Issues

#### A.   Defendant IMIA's Allegations That Plaintiff's Declaration Is A Sham

In very limited instances, the district court may find that a party's declaration or affidavit is a "sham" and disregard it for purposes of analyzing a motion for summary judgment. Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 266 (9th Cir. 1991). The sham affidavit rule precludes a party from creating a dispute of fact by drafting a affidavit that clearly and undisputably contradicts the party's prior deposition testimony. Id.

To find an affidavit is a sham, the district court must first make a factual determination that there is an inconsistency between the party's prior deposition testimony and subsequent affidavit that is both clear and unambiguous. Yeager v. Bowlin, 693 F.3d 1076, 1080 (9th Cir. 2012); Van Asdale v. Int'l Game Tech., 577 F.3d 989, 998-99 (9th Cir. 2009). If the district court finds a clear and unambiguous inconsistency, the district court may then strike that portion of the affidavit and disregard it for purposes of ruling on the motion for summary judgment. Id.

The sham affidavit rule does not apply to situations where the purported inconsistencies are minor, explainable, or are

10

simply the result of cross-examination concerning the credibility of the witness.  See Cabasug v. Crane Co., 989 F.Supp.2d 1027, 1054-55 (D. Haw. 2013), abrogated on other grounds in Air & Liquid Sys. Corp. v. DeVries, 586 U.S. 446 (2019).

Defendant IMIA argues that Plaintiff's Declaration (ECF No. 137-1) filed in Opposition to Defendant's Motion for Summary Judgment is a "sham."  Defendant IMIA, however, has not pointed to a single instance of a clear and unambiguous contradiction between Plaintiff's deposition testimony and her Declaration.

Defendant IMIA's Reply Concise Statement of Facts attempts to have the Court weigh evidence and determine the credibility of Plaintiff's Declaration when compared to other evidence in the record.  Such a request is inappropriate and not permitted in ruling on a Motion for Summary Judgment.

When evaluating a motion for summary judgment, the Court must view the facts and draw reasonable inferences in the light most favorable to the party opposing summary judgment.  Scott v. Harris, 550 U.S. 372, 380 (2007).  It is inappropriate for the Court to weigh disputed evidence or engage in credibility determinations in ruling on summary judgment.  In re Barboza, 545 F.3d 702, 707 (9th Cir. 2008).

The sham affidavit doctrine is not applicable here.  There are no clear and unambiguous contradictions between Plaintiff's prior deposition and the Declaration she submitted in opposition to the summary judgment motion.  In response to Defendant IMIA's Objection, Plaintiff filed a Sur-Reply.  Plaintiff has provided

the context and basis for her answers in her Declaration and her prior deposition testimony.  The sham affidavit rule does not preclude a party from elaborating on or clarifying prior testimony.  <u>Nelson v. City of Davis</u>, 571 F.3d 924, 928 (9th Cir. 2009).

The Ninth Circuit Court of Appeals has held that the sham affidavit rule should be applied with caution because it is in tension with the principle that the court must not make credibility determinations when ruling on summary judgment. <u>Yeager</u>, 693 F.3d at 1080.  Any inconsistency in Plaintiff's deposition testimony and her Declaration are issues of credibility for trial.  They do not provide a basis to ignore her Declaration for purposes of summary judgment.  <u>See</u> <u>Matsumura v. Bank of Am., N.A.</u>, Civ. No. 11-00608 JMS-BMK, 2013 WL 12140994, *4 (D. Haw. May 20, 2013).

Defendant IMIA's argument that Plaintiff's Declaration is a sham is without merit.

## B.   Defendant IMIA's Other Evidentiary Objections

At the summary judgment stage, a party does not have to produce evidence in a form that would be admissible at trial as long as the party satisfies the requirements of Federal Rule of Civil Procedure 56.  <u>Block v. City of Los Angeles</u>, 253 F.3d 410, 419 (9th Cir. 2001).

Defendant IMIA asserts a panoply of evidentiary objections to Plaintiff's Concise Statement of Facts submitted in Opposition

to Defendant's Motion for Summary Judgment.  The objections are overly broad and wide ranging and include vague references to relevance, hearsay, foundation, lack of personal knowledge, and the best evidence rule.

The objections focus on Plaintiff's Declaration and the Declaration of a former IMIA employee Adam Kahoekapu.  Defendant IMIA's objections that are based on foundation, relevance, and best evidence are misplaced at the summary judgment stage.  Plaintiff and Mr. Kahoekapu may testify at trial and provide the basis for their testimony.  Any foundation or relevance concerns may be raised at trial.

Defendant's objections based on hearsay and personal knowledge are unfounded.  Personal knowledge can be inferred from the declarations themselves, including their employment history with Defendant IMIA.  See Armstrong v. Hawaiian Airlines, Inc., 416 F.Supp.3d 1030, 1039 (D. Haw. 2019).  Hearsay can be considered at the summary judgment stage when the information may be presented in an admissible form at trial either through the speaker or through an exception to hearsay.  See Garris v. Fed. Bureau of Investigation, 937 F.3d 1284, 1293 (9th Cir. 2019); Fraser v. Goodale, 342 F.3d 1032, 1036-37 (9th Cir. 2003).

Defendant IMIA's objections to Plaintiff's Concise Statement of Facts are without merit.

## II.   There Are Genuine Disputes Of Material Facts As To Whether Plaintiff Was A "Seaman" Pursuant To The Jones Act

The Jones Act permits a "seaman injured in the course of employment" to recover damages against her employer.  46 U.S.C. § 30104.

Plaintiff must establish two threshold requirements in order to bring a negligence claim against her employer pursuant to the Jones Act:

(1)   she must establish that she was employed by the defendant at the time of the injury; and

(2)   she must establish that she meets the requirements for being a "seaman" within the meaning of the Jones Act.

Holm v. Meyers, 609 F.Supp.3d 1173, 1178 (W.D. Wash. 2022) (citing Norfolk Shipbuilding & Drydock Corp. v. Garris, 532 U.S. 811, 817 (2001)).

The Parties do not dispute that Plaintiff was employed by Defendant IMIA at the time of the injury on August 21, 2021.

The question at issue is whether Plaintiff was a "seaman" within the meaning of the Jones Act.

In Chandris, Inc. v. Latsis, 515 U.S. 347, 368 (1995), the United States Supreme Court set forth a two-prong test to determine whether a plaintiff is a "seaman" who is entitled to coverage pursuant to the Jones Act.

First, the employee's duties must "contribute to the function of the vessel or to the accomplishment of its mission." Id. at 376.

14

Second, the employee "must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature." Id. at 368.  The United States Supreme Court explained that the purpose of the second requirement is to "separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who only have a transitory or sporadic connection to a vessel in navigation." Id.

The inquiry into a plaintiff's seaman status is a mixed question of law and fact. Delange v. Dutra Constr. Co., 183 F.3d 916, 919 (9th Cir. 1999) (per curiam).  Where there are factual disputes as to seaman status, the question must be submitted to the jury.  Id.   A plaintiff's seaman status must be determined in the context of her overall employment with the defendant employer.  Chandris, 515 U.S. at 366-67.

The Ninth Circuit Court of Appeals has a Model Jury Instruction to give to the jury when they are determining whether a plaintiff is a seaman for purposes of the Jones Act.  The Model Jury Instruction on Seaman Status is as follows:

> The plaintiff seeks recovery against the defendant under the Jones Act for negligence.  She also seeks recovery under maintenance and cure.  Only a "seaman" can bring these claims.  The parties dispute whether or not plaintiff was employed as a seaman.
>
> The plaintiff must prove that she was a "seaman" in order to recover.  To prove seaman status, the plaintiff must prove the following elements by a preponderance of the evidence:
>
>> 1.   the plaintiff contributed to the mission or operation of a vessel or an identifiable

        group of vessels in navigation, whether
        underway or at anchor; and

2.    the plaintiff had an employment-related
        connection to the vessel or an identifiable
        group of vessels that was substantial in
        terms of both duration and nature.

The phrase "vessel in navigation" is not limited to
traditional ships or boats but includes every type of
watercraft or artificial contrivance used, or
practically capable of being used, as a means of
transportation on water.

The phrase "substantial in duration" means that the
plaintiff's connection to the vessel or an identifiable
group of vessels must be more than merely sporadic,
temporary, or incidental.

The phrase "substantial in nature" means that it must
regularly expose her to the special hazards and
disadvantages that are characteristic of a seaman's
work.

(9th Cir. Model Civil Jury Instruction 7.1).

There are genuine issues of material fact here that preclude a ruling on summary judgment as to Plaintiff's seaman status within the meaning of the Jones Act.  The Parties dispute facts as to both prongs of the test of whether Plaintiff was a seaman for purposes of the Jones Act.

As previously explained, the Court must view the facts and draw reasonable inferences in the light most favorable to the party opposing summary judgment.  <u>Scott</u>, 550 U.S. at 380.  The Court cannot weigh disputed evidence or engage in credibility determinations in ruling on summary judgment.  <u>In re Barboza</u>, 545 F.3d at 707.

**A.   There Are Material Disputes Of Fact As To Whether Plaintiff's Work Contributed To The Mission Or Operation Of A Vessel Or Group Of Vessels In Navigation**

First, the Parties dispute whether Plaintiff contributed to the mission or operation of the U.S.S. *William P. Lawrence* and/or other vessels.

**1.   Questions Of Fact About Whether Plaintiff's Work Contributed To A Vessel Or Group Of Vessels**

Plaintiff explained in her Declaration that she worked for Defendant IMIA performing various tasks including painting "work to help preserve the U.S. vessels [she] worked aboard and to prevent corrosion of the vessels. [Her] work aboard U.S. vessels included work that was supervised at times by Navy personnel, including work to ensure proper attachment of tank level indicators ("TLIs") and work to spray diesel in fuel tanks." (Plaintiff's Decl. at ¶ 5, attached to Pl.'s CSF in Opp., ECF No. 137-1).

Plaintiff stated that her work contributed to the operation of the vessels because without it the vessels would corrode and deteriorate in salt water.  (Id. at ¶ 19).

Defendant IMIA disputes that Plaintiff's work contributed to the operation of a vessel or group of vessels.  Defendant IMIA's General Manager Douglas Eiss stated in his deposition that Plaintiff's work was only preservation and repair work and was not necessary for the vessels' operation.  (Deposition of Douglass Eiss at pp. 17-18, attached to Def.'s CSF, ECF No. 130-

17

2).  Mr. Eiss does not specifically address whether Plaintiff's
work "contributed" to the operation of the vessel or a group of
vessels.  Mr. Eiss, however, stated that the vessels would
degrade over time if the type of work Plaintiff completed was not
done.  (Deposition of Douglass Eiss at pp. 19-20, attached to
Pl.'s CSF in Opp., ECF No. 137-4).

### 2.    Questions Of Fact About Whether Plaintiff Worked On A Vessel Or Group Of Vessels In Navigation

The Parties dispute the extent to which Plaintiff was on
board any vessel while in actual navigation and the extent to
which Plaintiff worked on any vessels in navigable water.
(Compare Plaintiff's Decl. at ¶¶ 2-9, 25-27, ECF No. 137-1; Eiss
Depo. at 15-20, 22-24, ECF No. 130-2).

The United States Supreme Court ruled that "the underlying
inquiry whether a vessel is or is not 'in navigation' for Jones
Act purposes is a fact-intensive question that is normally for
the jury and not the court to decide." Chandris, 515 U.S. at
373.  A vessel does not cease to be a vessel in navigation when
the vessel is not voyaging, but is at anchor, berthed, or at
dockside, even when the vessel is undergoing repairs in drydock.
Id. at 373-74.  A vessel may be in navigation even when it
returns from a voyage and is taken to a drydock or shipyard to
undergo repairs, or when it is moored to a dock.  Id.  The
question turns upon facts regarding the status of the ship, if
the vessel is intended to return to sea, the pattern of repairs

to the vessel, the extensive nature of the work, and whether the vessel has been withdrawn from navigation. Id. (citing West v. United States, 361 U.S. 118, 122 (1959)). These are questions for the jury to decide. Chandris, 515 U.S. at 373.

The contradictions here make it a question of fact for the jury to decide whether Plaintiff's work contributed to the mission or operation of a vessel or an identifiable group of vessels in navigation. See Stewart v. Dutra Const. Co., 543 U.S. 481, 496 (2005) (citing Chandris, 515 U.S. at 373).

### B. There Are Material Disputes Of Fact As To Whether Plaintiff's Work Was Substantial In Duration Or In Nature

Second, there are also genuine issues of material fact about whether Plaintiff's work was substantial in terms of both duration and nature. The Parties dispute the scope of Plaintiff's work and job duties. (Compare Plaintiff's Decl. at ¶¶ 2-9, 25-27, ECF No. 137-1; Eiss Depo. at 15-20, 22-25, ECF No. 130-2).

Plaintiff states that she worked for IMIA from October 2019 through August 21, 2021 and that the vast majority of her work was aboard United States Navy vessels. (Plaintiff's Declaration at ¶ 4, attached to Pl.'s CSF in Opp., ECF No. 137-1). Plaintiff states that some of her shifts aboard U.S. Navy vessels exceeded 12 hours and at least one exceeded 22 hours. (Id. at ¶ 6).

Plaintiff asserts that her work was substantial in nature because she was exposed to special hazards and dangers.

Plaintiff explained that given her small size she was assigned many jobs in tight spaces, including within tanks where others could not fit.  (<u>Id.</u> at ¶ 26).

Plaintiff's former co-worker Adam Kahoekapu stated in his Declaration that Plaintiff's work was "greatly respected," that Plaintiff was "efficient, hard-working, and skilled." (Declaration of Adam Kahoekapu at ¶ 12, attached to Pl.'s CSF in Opp., ECF No. 137-2).  Mr. Kahoekapu stated that Plaintiff "was substantially smaller in size than the average IMIA sandblaster, and therefore, she was often put in tight spots aboard vessels to perform various jobs."  (<u>Id.</u>)

Defendant IMIA disputes that Plaintiff's work was substantial in duration or in nature.  Defendant argues that Plaintiff's work was simply repair work.  Contrary to Defendant's position, the United States Supreme Court has ruled that a worker's status as a ship repairman did not prevent him from being in seaman status for purposes of the Jones Act.  <u>Sw. Marine, Inc. v. Gizoni</u>, 502 U.S. 81, 89 (1991).  It is the total circumstances of an individual's employment that must be weighed to determine the duration and nature of a worker's employment.  <u>Chandris</u>, 515 U.S. at 370.  The seaman status inquiry is not limited to a particular day, assignment, or job title, but requires an examination of the overall course of a worker's service.  <u>Id.</u> at 371-72.

It is a question of fact for the jury to decide whether Plaintiff's work was substantial in terms of both duration and

nature.  See Delange, 183 F.3d at 919 (overruling the district court's grant of summary judgment where fact issues as to plaintiff's role created questions as to whether he was a seaman and distinguishing Heise v. Fishing Co. of Alaska, Inc., 79 F.3d 903, 906 (9th Cir. 1996)); see also Becker v. Dillingham Const. Pac., Ltd., Civ. No. 00-200 HG, 2001 WL 969085, *6-7 (D. Haw. Mar. 21, 2001) (denying summary judgment due to genuine issues of material fact as to whether plaintiff's work was substantial and contributed to a vessel in navigation).

## III. There Are Genuine Disputes Of Material Facts As To Plaintiff's Jones Act Claims Against Defendant IMIA

Defendant IMIA additionally seeks summary judgment, arguing that even if Plaintiff was a seaman, the Court should find that Defendant IMIA was not negligent, that it has paid Plaintiff any damages she may be owed, and that it cannot be liable for punitive damages.

### A.   Jones Act Negligence

The Jones Act permits a seaman injured in the course of employment to recover damages against their employer.  46 U.S.C. § 30104.  To establish a cause of action for negligence pursuant to the Jones Act, a plaintiff must establish duty, breach, notice, and causation.  Ribitzki v. Canmar Reading & Bates, Ltd. P'ship, 111 F.3d 658, 664 (9th Cir. 1997).

The employer of a seaman has a duty under the Jones Act to use reasonable care to ensure that the seaman has a safe place to work.  Id. at 662-63.  Plaintiff must establish that the employer or one of its agents was negligent and that the negligence was a cause of her injuries "however slight."  Id. at 662.  The quantum of evidence necessary to sustain a finding of Jones Act negligence is less than that required for common law negligence and even the slightest negligence is sufficient to sustain a finding of liability.  Havens v. F/T Polar Mist, 996 F.2d 215, 218 (9th Cir. 1993).  An employer is only liable under the Jones Act, however, if the employer or its agent either knew or should have known of the dangerous condition causing the injury.  Id.

### B.   Maintenance And Cure

Under general maritime law, a seaman who becomes injured while in the service of a ship is entitled to maintenance and cure by her employer.  Gardiner v. Sea-Land Serv., Inc., 786 F.2d 943, 945-46 (9th Cir. 1986).  This right includes (1) maintenance which is a living allowance for food and lodging to the ill seaman; (2) cure which is reimbursement for medical expenses; and (3) unearned wages from the onset of injury until the end of the voyage.  Id. at 946.  The entitlement to maintenance and cure continues until the seaman reaches maximum cure, which is recovery as complete as the injury allows.  Permanente S.S. Corp. v. Martinez, 369 F.2d 297, 298-99 (9th Cir. 1966).

**C.   Punitive Damages**

To recover punitive damages for failure to pay maintenance and cure, a plaintiff must establish that the employer failed to provide maintenance and cure until plaintiff reached maximum medical recovery as a result of callous disregard, gross negligence, or actual malice.  Vaughan v. Atkinson, 369 U.S. 527, 531 (1962).

**D.   The Numerous Genuine Disputes Of Material Fact Preclude Summary Judgment In Favor Of Defendant On Any Of Plaintiff's Jones Act Claims**

As explained earlier, the Parties dispute nearly all material facts about the accident on August 21, 2021, including:

(1)  the instruction and the supervision of Plaintiff;

(2)  the use of equipment aboard the Vessel;

(3)  the nature and circumstances of how Plaintiff sustained her injuries on August 21, 2021;

(4)  the extent of Plaintiff's injuries;

(5)  the actions by Defendant IMIA following the incident on August 21, 2021;

(6)  notice to Defendant IMIA about the use of industrial vacuums by IMIA employees and whether there had been other incidents involving industrial vacuums operated by Defendant IMIA;

(7)  the relationship between Defendant IMIA and Plaintiff's prior employer Craft and Technical Solutions ("CTS"), including the supervision of Plaintiff by Defendant IMIA while she was employed with CTS;

(8)  the relationship and business interests of Defendant IMIA's General Manager Douglas Eiss and other Defendants in the case including Defendants Pacific Equipment Supply LLC and Pacific Equipment LLC.

The questions of material fact regarding Defendant's alleged breach of its duty to provide a safe working environment are questions for the jury. Martinez v. Korea Shipping Corp., 903 F.2d 606, 609 (9th Cir. 1990) (citing Lies v. Farrell Lines, Inc., 641 F.2d 765, 770 (9th Cir. 1981) ("Courts should exercise special care in considering summary judgment in Jones Act cases which require a very low threshold for submission to the jury"); see Wynn v. Harley Marine Srvs., Inc., 2020 WL 7319433, *1 (N.D. Cal. Dec. 11, 2020) (explaining that the disputes of fact precluded summary judgment which was "all the more true here because summary judgment is disfavored in Jones Act cases").

The genuine disputes of material fact regarding maintenance and cure and punitive damages are also questions for the jury. See Lui v. Fishing Co. of Alaska, Inc., 2015 WL 12559895, *5 (W.D. Wash. Apr. 6, 2015) (denying summary judgment where there were disputes of fact as to maintenance and cure and punitive damages under the Jones Act).

//
//
//
//
//
//
//
//

24

**CONCLUSION**

Defendant International Marine and Industrial Applicators, LLC's Motion for Summary Judgment (ECF No. 129) is **DENIED.**

IT IS SO ORDERED.

DATED: April 26, 2024, Honolulu, Hawaii.

*Helen Gillmor*
United States District Judge

Ashley Cooper v. Vigor Marine, LLC; Vigor Industrial, LLC; Brandsafway Industries, LLC; Brandsafway Services, LLC; Brandsafway Solutions, LLC; International Marine and Industrial Applicators, LLC; Industrial Applicators, LLC; Industrial Vacuum Equipment Corporation; Undustrial Vacuum Sales LLC; Industrial Vacuum Inc.; Pacific Equipment Supply LLC; Pacific Equipment Supply LLC, Civ. No. 22-00275 HG-RT; **ORDER DENYING DEFENDANT INTERNATIONAL MARINE AND INDUSTRIAL APPLICATORS, LLC'S MOTION FOR SUMMARY JUDGMENT (ECF No. 129)**