IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| ASHLEY COOPER, | ) | Civ. No. 22-00275 HG-RT |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| VIGOR MARINE, LLC; VIGOR | ) | |
| INDUSTRIAL, LLC; INTERNATIONAL | ) | |
| MARINE AND INDUSTRIAL | ) | |
| APPLICATORS, LLC; INDUSTRIAL | ) | |
| VACUUM EQUIPMENT CORPORATION; | ) | |
| PACIFIC EQUIPMENT SUPPLY INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| _____ | ) | |

**ORDER OVERRULING DEFENDANTS VIGOR MARINE, LLC AND VIGOR INDUSTRIAL, LLC'S NOTICE OF OBJECTION TO CONFIDENTIAL SETTLEMENTS (ECF No. 403)**

On August 21, 2021, Plaintiff Ashley Cooper was employed to conduct industrial painting and related repair work for Defendant International Marine and Industrial Applicators, LLC, aboard the U.S.S. *William P. Lawrence*, a U.S. Navy vessel.  The vessel was located at a graving dock at the Pearl Harbor Naval Shipyard in Hawaii.

Plaintiff asserts that while she was working aboard the vessel, she was injured while operating an industrial vacuum.

On May 6, 2022, Plaintiff filed a Complaint in Hawaii State Court.  (ECF No. 1-3).

On June 17, 2022, Defendants Vigor Marine, LLC and Vigor Industrial, LLC ("the Vigor Defendants") removed the case from

Hawaii State Court to this Court on the basis of diversity jurisdiction.  (ECF No. 1).

On April 10, 2024, Plaintiff filed the THIRD AMENDED COMPLAINT.  (ECF No. 150).

The THIRD AMENDED COMPLAINT seeks damages for Plaintiff's injuries against five sets of entities:

    (1)   DEFENDANTS VIGOR MARINE, LLC and VIGOR INDUSTRIAL, LLC, the general contractors on the job site where Plaintiff was injured;

    (2)   DEFENDANTS BRANDSAFWAY INDUSTRIES, LLC; BRANDSAFWAY, LLC; BRANDSAFWAY SERVICES, LLC; and BRANDSAFWAY SOLUTIONS, LLC, subcontractors on the job site where Plaintiff was injured;

    (3)   DEFENDANT INTERNATIONAL MARINE AND INDUSTRIAL APPLICATIONS, LLC, Plaintiff's employer;

    (4)   DEFENDANTS INDUSTRIAL VACUUM EQUIPMENT CORPORATION, INDUSTRIAL VACUUM SALES, LLC, and INDUSTRIAL VACUUM INC., who Plaintiff asserts manufactured the vacuum that caused her injuries; and

    (5)   DEFENDANTS PACIFIC EQUIPMENT SUPPLY LLC and PACIFIC EQUIPMENT LLC, who Plaintiff claims sold the vacuum to her employer Defendant International Marine and Industrial Applicators, LLC.

On May 6, 2024, the Court signed the Parties' STIPULATION FOR PARTIAL DISMISSAL WITHOUT PREJUDICE as to Defendants Brandsafway, LLC; Brandsafway Industries, LLC; and Brandsafway Solutions, LLC.  (ECF No. 171).

On June 17, 2024, the Court signed the Parties' STIPULATION FOR AMENDMENT AND PARTIAL DISMISSAL as to Defendant Pacific Equipment LLC.  The name of Defendant Pacific Equipment Supply LLC was changed to Defendant Pacific Equipment Supply, Inc.  (ECF No. 202).

2

On November 26, 2024, the Court signed the Parties' STIPULATION FOR DISMISSAL OF ALL CLAIMS AGAINST DEFENDANT BRANDSAFWAY SERVICES, LLC WITHOUT PREJUDICE.  (ECF No. 341).

On January 31, 2025, the Magistrate Judge held a hearing where two settlements were placed on the record.  (ECF No. 401).

First, there was a settlement on the record between Plaintiff and her employer Defendant International Marine and Industrial Applicators, LLC ("Defendant IMIA").

Second, there was a settlement between Plaintiff and the vacuum distributor Defendants Pacific Equipment Supply, Inc. and the vacuum manufacturer Defendant Industrial Vacuum Equipment Corporation.

The only remaining Defendants in this case other than the settling parties are the Vigor Defendants.

The Vigor Defendants orally objected to the two confidential settlements placed on the record on January 31, 2025.

On February 5, 2025, the Vigor Defendants filed a NOTICE OF OBJECTION.  (ECF No. 403).

First, the Vigor Defendants argue that Hawaii Revised Statute Section 663-15.5 should apply in this case.  Application of the state statute would allow them to learn the terms of the settlement.  The Vigor Defendants assert the Hawaii state law applies and requires the District Court to conduct a good faith settlement determination as to the two settlements placed on the record on January 31, 2025.

Second, the Vigor Defendants argue that to the extent Plaintiff settled with her employer, Defendant IMIA, that settlement should not be treated as confidential because it requires approval from the United States Department of Labor.

The Court finds that federal maritime law is applicable to the matters at issue in this case.  Hawaii Revised Statute Section 663-15.5 governing good faith settlements is not applicable to the settlements here.

In addition, the Vigor Defendants are not entitled to participate in confidential settlement negotiations between the other parties in this case on the basis that there are filings with the United States Department of Labor.

The Vigor Defendants' Objections (ECF No.  403) are **OVERRULED**.

## **STANDARD OF REVIEW**

There is a strong presumption in favor of allowing access to court documents.  Foltz v. State Farm Mut. Auto. Ins., 331 F.3d 1122, 1135 (9th Cir. 2003).  The Ninth Circuit Court of Appeals established the standards governing sealing documents in Kamakana v. City & Cnty. of Honolulu, 447 F.3d 1172, 1180-81 (9th Cir. 2006).  A party seeking to seal a judicial record bears the burden of overcoming the strong public policy favoring access to court records by meeting the compelling reasons standard.  Id. at 1178.

Under this stringent standard, a court may seal records only when it finds a compelling reason and must articulate the factual basis for its ruling.  Ctr. for Auto Safety v. Chrysler Grp., LLC, 809 F.3d 1092, 1096-97 (9th Cir. 2016).  The good cause standard, rather than the compelling reasons standard, applies to seal records attached to non-dispositive motions.  Id. at 1097-98.

## ANALYSIS

On January 31, 2025, the Magistrate Judge held confidential settlement hearings on the record between Plaintiff Ashley Cooper and separate settling Defendants.

First, there was a confidential settlement on the record between Plaintiff and Defendant IMIA.

Second, there was a separate, confidential settlement on the record between Plaintiff and Defendants Pacific Equipment Supply, Inc. and Industrial Vacuum Equipment Corporation.

Defendants Vigor Marine, LLC and Vigor Industrial, LLC ("Vigor Defendants") object to the confidential settlements being held without their presence and object to the terms of both settlements remaining confidential.

## I.   THERE ARE COMPELLING REASONS TO MAINTAIN THE CONFIDENTIALITY OF THE JANUARY 31, 2025 SETTLEMENTS

The Court finds that there are compelling reasons to keep the confidential settlement proceedings of January 31, 2025 under seal.  The Magistrate Judge found that the respective settlements

included confidentiality clauses and ruled that the settlement terms were to remain confidential.  (Minutes from January 31, 2025 hearing, ECF No. 401).  The District Court agrees.

Numerous courts in the Ninth Circuit have recognized the importance of protecting confidential settlement communications and materials in order to promote settlement and have concluded that this general policy satisfies the demanding "compelling reasons" standard to seal records of settlements.  In re Volkswagen Clean Diesel Mktg., Sales Pracs., & Prod. Liab. Litig., 2020 WL 2425792, at *4 (N.D. Cal. May 12, 2020); Celgard, LLC v. Targray Tech. Int'l, Inc., 2019 WL 3841997, at *2 (N.D. Cal. Aug. 15, 2019).

## II.  THE VIGOR DEFENDANTS HAVE NOT PROVIDED A BASIS TO REQUIRE DISCLOSURE OF THE SETTLEMENT TERMS

The Vigor Defendants first argue that the January 31, 2025 settlement terms should not remain confidential because Hawaii state law's good faith settlement statute applies to the proceedings.

### A.  The Matter Before The Court Is Governed By Federal Maritime Law

#### 1.  Choice Of Law Analysis

Article III of the United States Constitution grants the federal courts jurisdiction over maritime cases.  U.S. Const. art. III, § 2, cl. 1.  Federal district courts have original jurisdiction, exclusive of the courts of the States, of any civil

case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to jurisdiction, which they are otherwise entitled. 28 U.S.C. § 1333(1).

The admiralty and maritime jurisdiction of the United States extends to and includes cases of injury or damage, to person or property, caused by a vessel on navigable waters, even though the injury or damage is done or consummated on land. See 46 U.S.C. § 30101.

### a. The Nature Of Plaintiff's Claims Are In Federal Maritime Law

Federal maritime law applies where the tort or harm (1) occurred on or over navigable water or occurred on land in relation to a vessel and (2) bears a nexus to a traditional maritime activity. See 46 U.S.C. § 30101; Norfolk So. Railway Co. v. James N. Kirby Pty Ltd., 543 U.S. 14, 23 (2004).

Here, the Third Amended Complaint asserts that Plaintiff was injured when working on a United States vessel in the Pearl Harbor Naval Shipyard. (Third Amended Complaint at ¶ 11, ECF No. 150).

Federal maritime law governs. A review of the pleadings, including the Objections filed by the Vigor Defendants and their Reply, demonstrates that all of the Parties agree that the nature of Plaintiff's claims in this case are all brought pursuant to federal maritime law.

First, as to Plaintiff's claims against the Vigor Defendants, they are negligence causes of action brought pursuant to federal maritime law.

Second, Plaintiff's claims against her employer Defendant IMIA are negligence claims brought pursuant to federal maritime law as well as the Jones Act and maintenance and cure.

Third, Plaintiff's claims against Defendants Pacific Equipment Supply, Inc. and Industrial Vacuum Equipment Corporation are negligence claims brought pursuant to federal maritime law as well as products liability claims brought pursuant to federal maritime law.

There are no Hawaii state law claims in the Third Amended Complaint.

Courts in the District of Hawaii have previously held that federal maritime law applies as the substantive law to similar claims. Specifically, the District Court ruled that a plaintiff's tort claims which involved injuries to workers in dry docks at the Pearl Harbor Naval Shipyard established both the location and connection elements necessary for federal maritime law to apply. Cabasug v. Crane Co., 956 F.Supp.2d 1178, 1190 (D. Haw. 2013).

> **b.** **The Vigor Defendants' Removal Of The Case To Federal Court Based On Diversity Jurisdiction Does Not Alter the Application Of Federal Maritime Law As The Substantive Law**

The Vigor Defendants removed the case from Hawaii state court pursuant to diversity jurisdiction under 28 U.S.C. § 1332.

The removal to federal court pursuant to diversity jurisdiction does not alter the choice of law analysis.

It is well settled the even under diversity subject-matter jurisdiction, federal maritime law governs as the substantive law of the case if the claims come within the maritime jurisdiction conferred on the district courts by the Constitution and the jurisdictional statutes. <u>Adamson v. Port of Bellingham</u>, 907 F.3d 1122, 1126 (9th Cir. 2018). "In other words, if the district court could have maritime jurisdiction over a tort claim, substantive maritime law controls the claim, whatever the forum or asserted basis of jurisdiction." <u>Id.</u>; <u>see</u> <u>E. River S.S. Corp. v. Transamerica Delaval</u>, 476 U.S. 858, 864 (1986).

As discussed above, Plaintiff's case satisfies both the location and connection elements to traditional maritime activity.  As a result, substantive maritime law controls as the substantive law regardless of the basis of the Court's subject-matter jurisdiction based on diversity.  <u>Adamson</u>, 907 F.3d at 1126.

       **c.**    **Plaintiff's Disavowal of Fed. R. Civ. P. 9(h) Does Not Alter The Substantive Choice Of Law Analysis**

Federal Rule of Civil Procedure 9(h) operates as an identification mechanism through which a claimant may designate a claim or claims as within the Court's admiralty jurisdiction so as to invoke special rules of procedure.  Moore's Fed. Prac. 3d § 9.09[1]; <u>Greenwell v. Aztar Ind. Gaming Corp.</u>, 268 F.3d 486, 493

(7th Cir. 2001). For example, there is no right to a jury trial of a claim invoking admiralty jurisdiction pursuant to Fed. R. Civ. P. 9(h). See Luera v. M/V Alberta, 635 F.3d 181, 189 (5th Cir. 2011).

Here, Plaintiff's Third Amended Complaint provides that "This action is not subject to rule 9(h) of the Federal Rules of Civil Procedure." (Third Amended Complaint at ¶ 10, ECF No. 150). This does not alter the Court's analysis that substantive federal maritime law applies in this case.

Rule 9(h) does not authorize a plaintiff to choose the substantive law, only the special admiralty procedural rules. Carey v. Bahama Cruise Lines, 864 F.2d 201, 206 (1st Cir. 1988). Federal maritime law applies as the substantive law to tort claims for injuries on a vessel connected to maritime activity regardless of whether the claimant invokes admiralty jurisdiction under Fed. R. Civ. P. 9(h). Greenwell, 268 F.3d at 493; Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading, Inc., 697 F.3d 59, 69 (2d Cir. 2012).

Here, Plaintiff's statement that she declines to pursue her claims under the special admiralty procedural rules of Fed. R. Civ. P. 9(h) does not alter the Court's analysis that federal maritime law applies as the substantive law.

## 2. Federal Maritime Law Controls And Haw. Rev. Stat. § 663-15.5 Is Incompatible With Federal Law

Federal maritime tort law is "an amalgam of traditional common-law rules" and "does not result in automatic displacement

10

of state law." <u>Garcia v. Vitus Energy, LLC</u>, 605 F.Supp.3d 1188, 1200 (D. Alaska 2022).  A fundamental feature of federal maritime tort law is that state law may be used to supplement gaps in federal maritime law so long as the state law is "compatible with substantive maritime policies." <u>Yamaha Motor Corp., U.S.A. v. Calhoun</u>, 516 U.S. 199, 207 (1996).

Here, the Vigor Defendants assert that the Hawaii statute governing good faith settlements, Haw. Rev. Stat. § 663-15.5, should apply to supplement federal maritime tort law in this case.

Hawaii state law governing good faith settlement cannot apply in this case because it is not compatible with substantive federal maritime law policies.

### a.  Hawaii Law's Good Faith Settlement Statute Follows The Pro Tanto Approach

Under the pro tanto approach, when a settlement is deemed by a court to be given in good faith, the non-settling defendants are entitled to a set-off credit equal to the amount of the consideration paid in settlement. <u>Troyer v. Adams</u>, 77 P.3d 83, 98 (Haw. 2003).  Hawaii law provides for a pro tanto set off credit approach in addressing how a non-settling defendant will be credited for another defendant's settlement. <u>Id.</u>; Haw. Rev. Stat. § 663-15.5(a).  The settlement defendant is discharged from any liability to co-defendants for contribution and a determination of good faith settlement bars any cross-claims by

co-defendants against the settling defendant.  Haw. Rev. Stat. §
663-15.5(a), (d).

> **b.    Federal Maritime Law Governing Settlement
> Follows The Proportionate Share Approach**

Federal maritime tort law directly conflicts with Haw. Rev.
Stat. § 663-15.5.  In <u>McDermott, Inc. v. AmClyde and River Don
Castings, Ltd.</u>, 511 U.S. 202, 217-21 (1994), the United States
Supreme Court specifically rejected the use of the pro tanto
settlement credit approach in federal maritime law.  The United
States Supreme Court ruled that rather than the pro tanto
approach, the proportionate share approach applies in federal
maritime law cases.  <u>Id.</u> at 209.  Under the proportionate share
approach, the amount of a plaintiff's damages judgment against
the non-settling defendant is diminished by the proportion or
percentage of fault attributed to the settling defendants.  <u>Id.</u>
The proportionate share approach bars suits for contribution from
the settling defendants.  The non-settling defendant pays no more
than its share of the judgment that the jury finds is due the
plaintiff.  There is no analogous determination of good faith
settlement as required by the pro tanto approach.

> **c.    Haw. Rev. Stat. § 663-15.5 Does Not Apply
> Because It Is Incompatible With Governing
> Federal Maritime Law**

The question of whether the Hawaii state good faith
settlement statute conflicts with federal maritime law was

previously addressed by another Hawaii District Court Judge in
White v. Sabatino, 526 F.Supp.2d 1135, 1142 (D. Haw. 2007).

In White v. Sabatino, the defendant removed a maritime
action that was filed in Hawaii State Court to the United States
District Court for the District of Hawaii.  A request was made
for the District Court to rule that the settlement was made in
good faith pursuant to Haw. Rev. Stat. § 663-15.5.

The District Court Judge in White v. Sabatino ruled that
Hawaii's good faith settlement statute, Haw. Rev. Stat. § 663-
15.5, is a substantive rule, not a procedural one.  White v.
Sabatino, 526 F.Supp.2d 1135, 1139-40 (D. Haw. 2007).  The
District Court found that the Hawaii statute requiring the pro
tanto approach in Haw. Rev. Stat. § 663-15.5 directly conflicted
with the United States Supreme Court's decision adopting the
proportionate share approach in McDermott.  The District Court
ruled that the Hawaii State law was inapplicable because it was
incompatible with McDermott.

The District Court followed the reasoning of Slaven v. BP
America, Inc., 958 F.Supp. 1472, 1482-85 (C.D. Cal. 1997), which
had similarly ruled that the California statute governing good
faith settlements and the pro tanto approach were incompatible
with federal maritime law under McDermott and the proportionate
share approach.

This Court agrees with the reasoning in White v.
Sabatino and Slaven.  Haw. Rev. Stat. § 663-15.5 is incompatible

with the proportionate approach required by federal maritime law under <u>McDermott</u>.

### **B.    Filings With The Department Of Labor Do Not Alter The Confidentiality Of The Settlement**

The Vigor Defendants argue, alternatively, that even if Haw. Rev. Stat. § 663-15.5 does not apply, they believe the terms of the settlement between Plaintiff and her employer, Defendant IMIA, made pursuant to the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901, <u>et</u> <u>seq.</u>, should be made public.

Section 908(i) of the Longshore and Harbor Workers' Compensation Act provides that whenever the parties to any claim for compensation under the Act agree to a settlement, it must be approved by either an administrative law judge or the deputy commissioner unless it is found to be inadequate or procured by duress.  33 U.S.C. § 908(i)(1); 20 C.F.R. § 702.243.  The required contents of the settlement application are promulgated by the Department of Labor.  <u>O'Neil v. Bunge Corp.</u>, 365 F.3d 820, 823-24 (9th Cir. 2004).

Plaintiff and Defendant IMIA assert that they submitted Stipulations and Application for Approval of Settlement to the United States Department of Labor, Office of Workers' Compensation Programs Division of Longshore and Harbor Workers' Compensation for approval on February 11, 2025, pursuant to 33 U.S.C. § 908(i).  They assert that contrary to the Vigor

14

Defendants' assertion, there was no open settlement process and no public hearing.  (IMIA Response at p. 4, ECF No. 412).

Plaintiff and Defendant IMIA assert that on February 26, 2025, the United State Department of Labor issued an Order approving the Stipulations and Application for Approval of Settlement.  Plaintiff and Defendant IMIA state that the Vigor Defendants can seek a subpoena of the Department of Labor records if they can establish a basis for their receiving the information.  See 29 C.F.R. § 18.56.

Settlements made pursuant to 33 U.S.C. § 908(i) are subject to the Privacy Act of 1974 and the agency is only permitted to disclose the records under limited circumstances.  See Dept. of Labor Form LS-8, Settlement Approval Request Section 8(i); 5 U.S.C. § 552a(b) (stating that no agency shall disclose any record which is contained in a system of records by any means of communication to any person or to another agency, except under limited circumstances).

The Vigor Defendants have not established that they are entitled to know the confidential settlement terms provided to the Department of Labor, which are maintained pursuant to the Privacy Act of 1974, 5 U.S.C. § 552a(b).  The Vigor Defendants do not point to any law or provision to establish that they are entitled to the information.  The Vigor Defendants are free to pursue the question before the Department of Labor.

The McDermott proportionate share approach applies.  The Court finds that the settlement process before the Department of

Labor does not alter the Court's finding that there are compelling reasons to maintain the confidentiality of the settlements in this case.  <u>Ctr. for Auto Safety</u>, 809 F.3d at 1096-97.

<b><u>CONCLUSION</u></b>

The Vigor Defendants' Objections (ECF No.  403) are **OVERRULED**.

IT IS SO ORDERED.

DATED: April 3, 2025, Honolulu, Hawaii.

Helen Gillmor
United States District Judge

<u>Ashley Cooper v. Vigor Marine, LLC; Vigor Industrial, LLC;
International Marine and Industrial Applicators, LLC; Industrial
Vacuum Equipment Corporation; Pacific Equipment Supply Inc.</u>, Civ.
No. 22-00275 HG-RT; **ORDER OVERRULING DEFENDANTS VIGOR MARINE, LLC
AND VIGOR INDUSTRIAL, LLC'S NOTICE OF OBJECTION TO CONFIDENTIAL
SETTLEMENTS (ECF No. 403)**