IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| ASHLEY COOPER, | ) | CIV. NO. 22-00275 HG-RT |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| VIGOR MARINE, LLC; VIGOR | ) | |
| INDUSTRIAL, LLC, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**ORDER GRANTING DEFENDANTS VIGOR MARINE, LLC AND VIGOR INDUSTRIAL, LLC'S MOTION FOR SUMMARY JUDGMENT (ECF No. 344)**

On August 21, 2021, Plaintiff Ashley Cooper was employed to conduct cleaning work for Subcontractor International Marine and Industrial Applicators, LLC, aboard the U.S.S. *William P. Lawrence*, a U.S. Navy vessel.  The vessel was located at a graving dock at the Pearl Harbor Naval Shipyard in Hawaii.

Plaintiff asserts that she was injured when her right arm was sucked into an industrial vacuum while she was working aboard the vessel.

Plaintiff filed her lawsuit seeking damages for her injuries against various sets of entities:

    (1)   DEFENDANTS VIGOR MARINE, LLC and VIGOR INDUSTRIAL, LLC, the prime contractor and its affiliated entity at the job site where Plaintiff was injured;

    (2)   DEFENDANTS BRANDSAFWAY INDUSTRIES, LLC; BRANDSAFWAY, LLC; BRANDSAFWAY SERVICES, LLC; and BRANDSAFWAY SOLUTIONS, LLC, subcontractors on the job site where

1

Plaintiff was injured;

(3)    DEFENDANT INTERNATIONAL MARINE AND INDUSTRIAL
APPLICATORS, LLC, subcontractor on the job site and
Plaintiff's employer;

(4)    DEFENDANTS INDUSTRIAL VACUUM EQUIPMENT CORPORATION,
INDUSTRIAL VACUUM SALES, LLC, and INDUSTRIAL VACUUM
INC., entities which Plaintiff asserts manufactured the
vacuum that caused her injuries; and

(5)    DEFENDANTS PACIFIC EQUIPMENT SUPPLY LLC and PACIFIC
EQUIPMENT LLC, entities which Plaintiff claims sold the
vacuum to her employer Defendant International Marine
and Industrial Applicators, LLC.

Plaintiff has settled all of the claims in the Third Amended

Complaint except for her claims against Defendants Vigor Marine,

LLC, the general contractor on the vessel, and its related entity

Vigor Industrial, LLC.

Defendants Vigor Marine, LLC and Vigor Industrial, LLC

("Vigor Defendants") have filed a Motion for Summary Judgment.

The Vigor Defendants have moved for summary judgment on

Plaintiff's claims against them in Count I of the Third Amended

Complaint for negligence, negligence per se, and gross

negligence.

The Vigor Defendants argue that they are entitled to summary

judgment because there is no duty of care upon which Plaintiff

can bring a negligence cause of action against them for her

injuries pursuant to federal maritime law.  The Court agrees.  As

a matter of law, the Vigor Defendants did not owe Plaintiff a

duty of care to ensure her safety that would support a negligence

cause of action against them.

Defendants Vigor Marine, LLC and Vigor Industrial, LLC's Motion for Summary Judgment (ECF No. 344) is **GRANTED**.

## PROCEDURAL HISTORY

On May 6, 2022, Plaintiff filed a Complaint in the Circuit Court of the First Circuit, State of Hawaii.  (ECF No. 1-3).

On June 17, 2022, Defendants removed the Complaint to the United States District Court for the District of Hawaii.  (ECF No. 1).

On February 24, 2023, Plaintiff filed the First Amended Complaint.  (ECF No. 36).

On May 22, 2023, Defendants International Marine and Industrial Applicators, LLC; IMIA, LLC; IMIA Holdings, Inc.; and Doug Eiss filed a Motion to Dismiss.  (ECF No. 67).

On July 18, 2023, the Court held a hearing on the Motion to Dismiss.  (ECF No. 76).

On July 19, 2023, the Court issued the ORDER GRANTING DEFENDANTS INTERNATIONAL MARINE AND INDUSTRIAL APPLICATORS, LLC; IMIA, LLC; IMIA HOLDINGS, INC.; AND DOUG EISS'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM WITH LEAVE TO AMEND.  (ECF No. 77).

On September 5, 2023, Plaintiff filed the SECOND AMENDED COMPLAINT.  (ECF No. 88).

On March 1, 2024, Defendant International Marine and
Industrial Applicators, LLC filed a Motion for Summary Judgment
and Concise Statement of Facts in Support.  (ECF Nos. 129 and
130).

On March 14, 2024, the Magistrate Judge granted Plaintiff's
request to file a Third Amended Complaint.  (ECF Nos. 135, 146).

On April 10, 2024, Plaintiff filed the THIRD AMENDED
COMPLAINT.  (ECF No. 150).

On April 23, 2024, the Court held a hearing on Defendant
International Marine and Industrial Applicators, LLC's Motion for
Summary Judgment.  (ECF No. 166).

On April 26, 2024, the Court issued an ORDER DENYING
DEFENDANT INTERNATIONAL MARINE AND INDUSTRIAL APPLICATORS, LLC'S
MOTION FOR SUMMARY JUDGMENT.  (ECF No. 167).

On May 6, 2024, the Court approved a STIPULATION FOR PARTIAL
DISMISSAL WITHOUT PREJUDICE against Defendants Brandsafway, LLC,
Brandsafway Industries, LLC and Brandsafway Solutions, LLC.  (ECF
No. 171).

On June 17, 2024, the Court approved the STIPULATION FOR
AMENDMENT AND PARTIAL DISMISSAL WITHOUT PREJUDICE as to Pacific
Equipment Supply Inc.  (ECF No. 202).

On November 26, 2024, the Court approved the Parties'
STIPULATION FOR DISMISSAL OF ALL CLAIMS AGAINST DEFENDANT
BRANDSAFWAY SERVICES, LLC WITHOUT PREJUDICE.  (ECF No. 341).

4

On December 4, 2024, Defendants Vigor Marine LLC and Vigor Industrial LLC filed their Motion for Summary Judgment. (ECF No. 344).

On December 12, 2024, the Court held the Motion in abeyance pending resolution of the Parties' Mediation scheduled for January 2025. (ECF No. 375).

On January 31, 2025, the Parties placed a Partial Settlement on the Record before the Magistrate Judge. (ECF No. 401).

On February 5, 2025, the Vigor Defendants filed an Objection to the Partial Settlement on the Record. (ECF No. 403).

On April 2, 2025, the District Court held a hearing and overruled the Vigor Defendants' Objection. (ECF No. 440).

On April 3, 2025, the District Court issued an ORDER OVERRULING DEFENDANTS VIGOR MARINE LLC AND VIGOR INDUSTRIAL LLC'S NOTICE OF OBJECTION TO CONFIDENTIAL SETTLEMENTS. (ECF No. 441).

On April 8, 2025, the District Court approved a STIPULATION AND ORDER FOR DISMISSAL WITH PREJUDICE OF ALL CLAIMS AGAINST DEFENDANTS INTERNATIONAL MARINE AND INDUSTRIAL APPLICATORS LLC, INDUSTRIAL VACUUM EQUIPMENT CORPORATION, AND PACIFIC EQUIPMENT SUPPLY INC. (ECF No. 442).

On April 28, 2025, Plaintiff filed her Opposition to the Vigor Defendants' Motion for Summary Judgment. (ECF No. 446).

On May 14, 2025, the Vigor Defendants filed their Reply. (ECF No. 449).

On May 16, 2025, Plaintiff filed a Motion to file a Sur-Reply.  (ECF No. 450).

On May 30, 2025, the Court granted Plaintiff's Motion to file a Sur-Reply.  (ECF No. 451).

On June 18, 2025, Plaintiff filed her Sur-Reply.  (ECF No. 452).

On August 28, 2025, Plaintiff filed a Notice of Supplemental Authority.  (ECF No. 453).

## BACKGROUND

**The Following Facts Are Not In Dispute:**

In January 2020, the United States of America awarded a prime contract to Defendant Vigor Marine LLC to repair the USS *William P. Lawrence* (the "Vessel").  (Prime Contract No. N002420D4442 between the United States and Vigor Marine LLC, attached as Ex. 1 to Def.'s Concise Statement of Facts ("CSF"), ("Prime Contract"), ECF No. 344-3).

Defendant Vigor Marine LLC was the prime contractor for the Vessel's repairs.  (Deposition of Thomas Freeman, 30(b)(6) representative for Defendants Vigor Marine LLC and Vigor Industrial LLC, at p. 28 attached as Ex. A to Pl.'s CSF, ECF No. 447-1).  Defendant Vigor Marine LLC's affiliated entity, Defendant Vigor Industrial LLC, assisted Defendant Vigor Marine LLC with tasks as the prime contractor.  (Id. at p. 11).

Defendant Vigor Marine LLC, as the prime contractor, entered into various subcontracts to complete the tasks for the Vessel repair.

Defendant Vigor Marine LLC subcontracted with International Marine & Industrial Applicators LLC ("Subcontractor IMIA") to furnish all "labor, material, equipment, supervision, QA, and engineering necessary to" repair the Forward Stack of the Vessel. (Subcontracts between Vigor Marine LLC and International Marine & Industrial Applicators LLC, attached as Ex. 2 to Def.'s CSF, ("Subcontracts"), ECF No. 344-4).

Subcontractor IMIA employed Plaintiff Ashley Cooper. (Declaration of Plaintiff Ashley Cooper signed March 24, 2024, at ¶ 2, ECF No. 137-1).  Plaintiff was never employed by the Vigor Defendants.  (See id.)

Subcontractor IMIA controlled the means and method of performing the contracted work.  (Subcontracts at p. 2, 8, ECF No. 344-4; Deposition of Douglas Eiss ("Eiss Depo.") at pp. 298-304, attached as Ex. 4 to Def.'s CSF, ECF No. 344-6; Deposition of IMIA 30(b)(6) Designee Ray Liz at p. 46 ("Liz Depo.") attached as Ex. 6 to Def.'s CSF, ECF No. 344-8).  Subcontractor IMIA, not the Vigor Defendants, determined which of its employees to assign to which tasks, and what equipment to use for specific tasks. (Id.)

Subcontractor IMIA was tasked to remove the paint on the

Forward Stack of the Vessel by sandblasting the hull with abrasive copper slag blast media, which requires the cleanup of spent blast media. (Eiss Depo. at pp. 26-29, attached as Ex. 4 to Def.'s CSF, ECF No. 344-6).

Subcontractor IMIA provided and used industrial vacuums on the *USS William P. Lawrence* Project. (Id. at p. 40). The industrial vacuum at issue was owned, maintained, serviced, and used by Subcontractor IMIA. (Id.; see also Deposition of Ashley Cooper ("Cooper Depo.") at pp. 75-78, attached as Ex. 8 to Def.'s CSF, ECF No. 344-10).

In May 2021, Subcontractor IMIA transferred Plaintiff Ashley Cooper from its Seattle, Washington location to Honolulu to work aboard the Vessel for which IMIA was the subcontractor and Vigor served as the prime contractor. (Declaration of Plaintiff Ashley Cooper at ¶¶ 2-3, attached to Pl.'s Additional Concise Statement of Facts ("CSF"), ("Cooper Decl."), ECF No. 444-1; Prime Contract, ECF No. 344-3; Subcontracts, ECF No. 344-4).

On August 21, 2021, Plaintiff was at work for IMIA in a containment. (Cooper Decl. at ¶¶ 3-4, ECF No. 444-1; see Declaration of Plaintiff Ashley Cooper signed March 24, 2024, at ¶¶ 10-14, ECF No. 137-1). Plaintiff was cleaning up debris in the Forward Stack containment, the task for which Subcontractor IMIA was contracted to complete repairs for Vigor as the prime contractor. (Id.; Pl.'s Additional CSF at ¶ 5, ECF No. 445).

8

Plaintiff was injured while using an industrial vacuum owned and maintained by Subcontractor IMIA. (Eiss Depo. at p. 40, attached as Ex. 4 to Def.'s CSF, ECF No. 344-6; <u>see</u> Declaration of Plaintiff Ashley Cooper signed March 24, 2024, at ¶¶ 10-14, 20, ECF No. 137-1).

There were no employees of the Vigor Defendants in or around the Forward Stack containment on the day of the incident and no Vigor Defendant employees had any communication with Plaintiff or any other cleaning crew members. (Cooper Decl. at ¶¶ 3-7, ECF No. 444-1; Cooper Depo. at p. 220, attached as Ex. 8 to Def.'s CSF, ECF No. 344-10; Deposition of Robert Hasley at p. 248, attached as Ex. 11 to Def.'s CSF, ECF No. 344-13; Deposition of Jordan Gervacio at p. 122, attached as Ex. 13 to Def.'s CSF, ECF No. 344-15; Deposition of Kamal Hawley at p. 159, attached as Ex. 15 to Def.'s CSF, ECF No. 344-17; Declaration of Plaintiff Ashley Cooper signed March 24, 2024, at ¶ 21, ECF No. 137-1).

Plaintiff received longshoreman benefits from her employer, Subcontractor IMIA, for the injuries she sustained on August 21, 2021. (Cooper Decl. at ¶ 8, ECF No. 444-1).

The Parties dispute who is responsible for Plaintiff's injuries that she sustained on August 21, 2021. Specifically, the Parties dispute whether the Vigor Defendants, the prime contractor, owed a duty of care to ensure Plaintiff's safety when Plaintiff was employed by Subcontractor IMIA.

## STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  To defeat summary judgment "there must be sufficient 'evidence that a reasonable jury could return a verdict for the nonmoving party.'" Nidds v. Schindler Elevator Corp., 113 F.3d 912, 916 (9th Cir. 1997) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

The moving party has the initial burden of "identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The moving party, however, has no burden to negate or disprove matters on which the opponent will have the burden of proof at trial.  The moving party need not produce any evidence at all on matters for which it does not have the burden of proof.  Celotex, 477 U.S. at 325.  The moving party must show, however, that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law.  That burden is met by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case. Id.

10

If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence of probative evidence tending to support its legal theory. Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 282 (9th Cir. 1979). The opposing party must present admissible evidence showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(c); Brinson v. Linda Rose Joint Venture, 53 F.3d 1044, 1049 (9th Cir. 1995). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Nidds, 113 F.3d at 916 (quoting Anderson, 477 U.S. at 249-50).

The court views the facts in the light most favorable to the non-moving party. State Farm Fire & Cas. Co. v. Martin, 872 F.2d 319, 320 (9th Cir. 1989). Opposition evidence may consist of declarations, admissions, evidence obtained through discovery, and matters judicially noticed. Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 324. The opposing party cannot, however, stand on its pleadings or simply assert that it will be able to discredit the movant's evidence at trial. Fed. R. Civ. P. 56(e); T.W. Elec. Serv., 809 F.2d at 630. The opposing party cannot rest on mere allegations or denials. Fed. R. Civ. P. 56(e); Gasaway v. Northwestern Mut. Life Ins. Co., 26 F.3d 957, 959-60 (9th Cir. 1994). "When the nonmoving party relies only on its own affidavits to oppose summary judgment, it cannot rely on

11

conclusory allegations unsupported by factual data to create an issue of material fact." Hansen v. U.S., 7 F.3d 137, 138 (9th Cir. 1993); see also Nat'l Steel Corp. v. Golden Eagle Ins. Co., 121 F.3d 496, 502 (9th Cir. 1997).

## ANALYSIS

## I.  Plaintiff's Claims Against The Vigor Defendants Are Governed By Federal Maritime Law

### A.  Choice Of Law Analysis

Article III of the United States Constitution grants the federal courts jurisdiction over maritime cases. U.S. Const. art. III, § 2, cl. 1. Federal district courts have original jurisdiction, exclusive of the courts of the States, of any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled. 28 U.S.C. § 1333(1).

The admiralty and maritime jurisdiction of the United States extends to and includes cases of injury or damage, to person or property, caused by a vessel on navigable waters, even though the injury or damage is done or consummated on land. See 46 U.S.C. § 30101.

B.    Federal Maritime Law Governs Plaintiff's Tort Claims
      Against The Vigor Defendants

Federal maritime law applies where the tort or harm (1)
occurred on or over navigable water or occurred on land in
relation to a vessel and (2) bears a nexus to a traditional
maritime activity.  See 46 U.S.C. § 30101; Norfolk So. Railway
Co. v. James N. Kirby Pty Ltd., 543 U.S. 14, 23 (2004).

Here, Plaintiff was injured when working on a United States
vessel in the Pearl Harbor Naval Shipyard.  (Declaration of
Plaintiff Ashley Cooper signed March 24, 2024, at ¶¶ 2, 9-14, ECF
No. 137-1; see Third Amended Complaint at ¶ 11, ECF No. 150).

Federal maritime law governs.  As the Court explained in the
April 2, 2025 Order, a review of the pleadings demonstrates that
the nature of Plaintiff's claims against the Vigor Defendants are
all brought pursuant to federal maritime law.  (Order at pp. 7-9,
ECF No. 441).  Plaintiff's negligence claims against the Vigor
Defendants involve injuries aboard a Vessel in a dry dock at the
Pearl Harbor Naval Shipyard which satisfy both the location and
connection elements necessary for federal maritime law to apply.
See Cabasug v. Crane Co., 956 F.Supp.2d 1178, 1190 (D. Haw.
2013).

II.  Negligence Causes Of Action Pursuant To Federal Maritime Law

The elements for a federal maritime law negligence cause of

13

action are defined similarly to the common law.  White v.
Sabatino, 526 F.Supp.2d 1143, 1156–57 (D. Haw. 2007).  A
plaintiff must establish: (1) a duty; (2) a breach of that duty;
(3) proximate cause; and (4) damages.  Id.; see Shaw v. United
States, 436 F.Supp.3d 1315, 1327 (N.D. Cal. 2020).

Gross negligence in federal maritime law is defined as "the
intentional failure to perform a manifest duty in reckless
disregard of the consequences as affecting the life or property
of another; such a gross want of care and regard for the rights
of others as to justify the presumption of willfulness and
wantonness."  Royal Ins. Co. of Am. v. Sw. Marine, 194 F.3d 1009,
1015 (9th Cir. 1999).

In order to defeat the motion for summary judgment,
Plaintiff Cooper must establish that the Vigor Defendants owed
her a duty of care as a matter of law.  See Martinez v. Korea
Shipping Corp., 903 F.2d 606, 609 (9th Cir. 1990) (explaining
that the existence and extent of a duty of care in federal
maritime law are questions of law).

## III. Duty of Care Owed To Workers in Federal Maritime Law

The duty of care for a negligence claim brought pursuant to
federal maritime law depends on the relationship between the
parties.  Negligence claims are generally brought by maritime
workers against either the vessel owners or their employers.

**A.    Vessel Owners Owe A Duty Of Care**

Vessel owners owe three narrow duties to longshoreman workers.  Quevedo v. Trans-Pacific Shipping, Inc., 143 F.3d 1255, 1258 (9th Cir. 1998).

First, vessel owners have a duty to exercise reasonable care to prevent injuries to longshoremen in the areas of the ship "under the active control of the vessel."  Howlett v. Birkdale Shipping Co., 512 U.S. 92, 98 (1994) (citing Scindia Steam Nav. Co. v. De los Santos, 451 U.S. 156, 165 (1981)).

Second, vessel owners have a duty to intervene if they know of a hazardous condition, realize the hazard presents an unreasonable risk of harm to the longshoreman worker, and know the hazard has not been remedied.  Quevedo, 143 F.3d at 1260.

Third, and finally, vessel owners must exercise an ordinary duty of care under the circumstances to turn over the ship and its equipment and appliances in such condition that an experienced contractor will be able to carry out its operations with reasonable safety to persons and property.  Howlett, 512 U.S. at 98; see Murray v. Southern Route Maritime SA, 870 F.3d 915, 919 (9th Cir. 2017).

The Vigor Defendants are not the vessel owners of the U.S.S. William P. Lawrence, the Vessel at issue in this case. The Vigor Defendants cannot owe a duty of care to Plaintiff based

15

on theories that are limited to recovery from vessel owners.

## B.    Employers Owe A Responsibility To Longshore Workers

Pursuant to the Longshore and Harbor Workers' Compensation Act, a longshoreman employee may not recover in tort for the negligence of his employer; rather, he is entitled to statutory payments.[1]  Scheuring v. Traylor Bros., Inc., 476 F.3d 781, 787-88 (9th Cir. 2007).

Here, Plaintiff Cooper concedes that Subcontractor IMIA was her employer and that she received compensation for her injuries from Subcontractor IMIA pursuant to the Longshore and Harbor Workers' Compensation Act.[2]  (Cooper Decl. at ¶ 8, ECF No. 444-

------

[1] The exception for liability against dual-role employers and vessel owners does not apply here.  Section 905(b) of the Longshore and Harbor Workers' Compensation Act allows an employee to recover for the negligence of employers acting in a dual role as both employer and the vessel owner in limited situations.  Jones v. Laughlin Steel Corp. v. Pfeifer, 462 U.S. 523, 531-32 (1983).  In order to recover in negligence from a dual-role employer and vessel owner, the employee must prove that the negligence was caused by the defendant acting in its capacity as the vessel owner.  Id.

[2] Despite her admission that she received compensation as a longshoreman, Plaintiff argues that she is a "seaman" within the meaning of the Jones Act.  Pursuant to the Jones Act, the employer of a seaman owes the seaman a duty to use reasonable care to ensure that the seaman has a safe place to work.  Waters v. Mitchell, 600 F.Supp.3d 1177, 1184 (W.D. Wash. 2022) (citing Ribitzki v. Canmar Reading & Bates, Ltd. P'ship, 111 F.3d 658, 662-63 (9th Cir. 1997)).  As Subcontractor IMIA is Plaintiff's employer and not the Vigor Defendants, the Vigor Defendants owe Plaintiff no duty of care under the Jones Act.

1).

The Vigor Defendants are not Plaintiff's employer.  The
Vigor Defendants do not owe Plaintiff statutory damages pursuant
to the Longshore and Harbor Workers' Compensation Act.

### C.    Prime Contractors Generally Do Not Owe A Duty Of Care To Their Subcontractor's Employees

Plaintiff seeks to sue the Vigor Defendants pursuant to
federal maritime law on the basis that Defendant Vigor Marine LLC
served as the prime contractor for the Vessel upon which she
worked for Subcontractor IMIA.  The question is what duty, if
any, may be owed to Plaintiff by the Vigor Defendants who were
neither the vessel owner nor her employer.

### 1.    A Hirer Of Independent Contractors Generally Owes No Duty Of Care To Ensure The Safety Of The Contractor's Employee

The Ninth Circuit Court of Appeals looks to the Restatement
(Second) of Torts in determine the duty of care owed in federal
maritime negligence claims.  <u>Nelson v. United States</u>, 639 F.2d
469, 474 (9th Cir. 1980).  Pursuant to the Restatement (Second)
of Torts, the employer of an independent contractor is generally
not liable for physical harm caused to another by an act or
omission of the contractor or his servants.  Restatement (Second)
of Torts § 409 (1965).  One exception to the rule occurs when the
hirer selects an independent contractor to perform work that has

17

a "peculiar" risk of harm.  Restatement (Second) of Torts § 413.

The Ninth Circuit Court of Appeals addressed this situation and the applicability of the Restatement (Second) of Torts § 413 in federal maritime negligence actions in <u>Nelson</u>, 639 F.2d at 474.

> **2.    The Ninth Circuit Court Of Appeals Held In <u>Nelson v. United States</u>, 639 F.2d 469, 474 (9th Cir. 1980) That A Hirer Owes A Duty Of Care To An Independent Contractor's Employee In Narrow, Limited Circumstances**

In <u>Nelson</u>, the United States Coast Guard awarded a contract to a company named Duncanson-Harrelson to repair a wave suppressor in San Francisco Bay.  639 F.2d at 471.  The contractor was to remove and replace twenty piles.  <u>Id.</u>  The contractor's employee, Albert Nelson, was a pile driver who was hired by the contractor for the job.  <u>Id.</u>  Mr. Nelson drowned while working on the barrier.  <u>Id.</u>

The estate of Mr. Nelson sued the Government, not the employer, because it claimed that the Government owed Mr. Nelson a duty to provide a safe environment to work because the conditions presented a peculiar risk of harm.  <u>Id.</u>  The estate claimed that the Government's failure to perform an on-site inspection or to use its authority to stop work during particularly hazardous conditions caused Mr. Nelson's drowning. <u>Id.</u> at 472.

18

The trial court found there was a duty of care owed by the Government to the employees of its contractor and the estate was awarded damages. Id.

On appeal, the Government argued that, under federal maritime law, there was no duty of care owed by the hirer to the employees of its independent contractor. Id. at 473.

Just as in this case, the appellate court in Nelson was faced with the question if there was a "duty owed by one who employs an independent contractor to the contractor's employees in the context of the special duties and dangers of work performed in circumstances where maritime law controls." Id.

The Ninth Circuit Court of Appeals ruled in Nelson that Section 413 of the Restatement (Second) of Torts controlled whether there was a duty of care owed by the hirer of a contractor to the independent contractor's employee. Id.

Section 413 of the Restatement (Second) of Torts provides:

**§ 413 - Duty to Provide for Taking of Precautions Against Dangers Involved in Work Entrusted to Contractor**

One who employs an independent contractor to do work which the employer should recognize as likely to create, during its progress, a peculiar unreasonable risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the absence of such precautions if the employer

    (a)  fails to provide in the contract that the contractor shall take such precautions, or

    (b)  fails to exercise reasonable care to provide

> in some other manner for the taking of such
> precautions.

Restatement (Second) of Torts § 413 (1965).

In <u>Nelson</u>, the appellate court recognized that there was conflicting caselaw as to whether a general contractor owes a duty of care to a subcontractor's employee.  <u>Nelson</u>, 639 F.2d at 478 (citing <u>McGarry v. United States</u>, 549 F.2d 587, 590-91 (9th Cir. 1976) and <u>Lindler v. District of Columbia</u>, 502 F.2d 495, 498-99 (D.C. Cir. 1974) contra. <u>Bramer v. United States</u>, 595 F.2d 1141, 1144-46 (9th Cir. 1979) and <u>King v. Shelby Rural Elec. Coop.</u>, 502 S.W.2d 659, 663 (Ky. Ct. App. 1973)).

Relying on the Restatement (Second) of Torts, the Ninth Circuit Court of Appeals found that the duty of care provided in Section 413 was intended to apply to the public and not to the subcontractor's employees.  The Appellate Court ruled that Section 413 could be extended to the subcontractor's employees only in limited circumstances.  The Appeals Court found that there was generally no duty of care to ensure safety from the hirer to the independent subcontractor's employees under federal maritime law.  <u>Nelson</u>, 639 F.2d at 476 (citing <u>Bramer v. United States</u>, 595 F.2d 1141, 1144-46 (9th Cir. 1979) and <u>King v. Shelby Rural Elec. Coop.</u>, 502 S.W.2d 659, 663 (Ky. Ct. App. 1973)).

The Appellate Court reasoned that the duty of care is limited to situations when the hirer of the independent contractor is significantly involved in the safety aspects of the

job or when the hirer has acted in a way to aggravate the job's

danger.  Nelson, 639 F.3d at 479.  The Ninth Circuit Court of

Appeals ruled as follows:

> Under the general admiralty law the [hirer] is not
> liable for injuries to the employees of its independent
> contractors arising out of the performance of
> inherently and peculiarly dangerous work in
> circumstances in which the contractor is solvent and is
> as well informed and competent as the [hirer] in the
> methods necessary to avoid accidental injuries to
> workers, absent significant [hirer] involvement in
> safety aspects of the job or a [hirer's] act
> aggravating the job's danger.

Id.

### 3.    The Holding In Nelson v. United States, 639 F.2d 469, 474 (9th Cir. 1980) Is Not Limited To Claims Against The United States

The Appellate Court in Nelson did not limit its analysis to

maritime negligence claims asserted against the Government, as

argued by the Plaintiff.  639 F.2d at 474.  Rather, the Ninth

Circuit Court of Appeals specifically ruled that federal maritime

law generally limits negligence claims of workers to claims

against their employer.  Id. at 478.  The Appeals Court reasoned

that under federal maritime law it is usually the independent

contractor who owes its employees a duty of care, not the hirer

of the independent contractor.  Id.  The Appellate Court

explained that if a hirer regularly owed a duty of care to the

employees of its independent contractors it would "simply

invalidate the previously valid independent contractor/owner

relation as a practical matter." Id.  The Ninth Circuit Court of Appeals held:

> As long as an independent contractor is informed about particular safety risks, and is competent and solvent, there is no reason in law or policy why he alone should not be fully responsible for injuries to workmen arising out of the performance of inherently dangerous jobs in which the contractor has special skill and experience not shared with the owner.

Id.

Pursuant to Nelson, a prime contractor in a maritime negligence case owes a duty of care to a subcontractor's employee only where (1) the prime contractor retained significant control and involvement over the safety aspects of the job the employee performed or (2) the prime contractor's own negligence aggravated the risk that caused the employee's injury.  Id.

**IV.  The Duty Of Care A Prime Contractor Owes To A Subcontractor's Employees Is Limited To Situations Where The Prime Contractor Controls The Job's Safety Or Creates An Aggravated Risk Of Injury**

The Parties agree that Subcontractor IMIA was Plaintiff Cooper's employer.  The Parties agree that Defendant Vigor Marine LLC was the prime contractor that contracted with Subcontractor IMIA for repairs to the Forward Stack of the Vessel.

Pursuant to Nelson, Plaintiff may only prevail on her maritime negligence causes of action against the Vigor Defendants if she can establish that either:

(1)  the Vigor Defendants retained significant control and

22

involvement over the safety aspects of her job; or

(2)   the Vigor Defendants performed an act that aggravated
      the risk that caused Plaintiff Cooper's injury.

## A.   Subcontractor IMIA Controlled Plaintiff And Her Job Duties

The Parties agree that Plaintiff was employed by Subcontractor IMIA.  The Parties agree that Subcontractor IMIA was contracted by the Vigor Defendants for Forward Stack repair and preservation on the Vessel.  The Parties agree that Subcontractor IMIA assigned Plaintiff to pick up trash and clean up the Forward Stack containment area.

There is no dispute that Subcontractor IMIA controlled the means and method of performing the contracted work. (Subcontracts at p. 2, 8, ECF No. 344-4; Eiss Depo. at pp. 298-304, attached as Ex. 4 to Def.'s CSF, ECF No. 344-6; Liz Depo. at p. 46, attached as Ex. 6 to Def.'s CSF, ECF No. 344-8). Subcontractor IMIA, not the Vigor Defendants, determined which of its employees to assign to which tasks, and what equipment to use for specific tasks.  (Id.)

Subcontractor IMIA was tasked to remove the paint on the Forward Stack of the Vessel.  (Eiss Depo. at pp. 26-29, attached as Ex. 4 to Def.'s CSF, ECF No. 344-6). Subcontractor IMIA provided and used industrial vacuums on the USS William P. Lawrence Project to perform its work.  (Id. at p. 40).

23

The Parties agree that on August 21, 2021, Plaintiff was injured while using an IMIA industrial vacuum in the containment of the Forward Stack. (Cooper Decl. at ¶¶ 3, 8, ECF No. 444-1). The Parties agree that the industrial vacuum used by Plaintiff was owned and maintained by Subcontractor IMIA. (Eiss Depo. at p. 40, attached as Ex. 4 to Def.'s CSF, ECF No. 344-6).

The Parties agree that the Vigor Defendants did not directly oversee or supervise Plaintiff or instruct her on any protocols including use of the industrial vacuum. (Cooper Decl. at ¶¶ 3-7, ECF No. 444-1; Cooper Depo. at pp. 220-21, attached as Ex. 8 to Def.'s CSF, ECF No. 344-10). There were no employees of the Vigor Defendants in or around the Forward Stack containment on the day of the incident and no Vigor Defendant employees had any communication with Plaintiff or any other cleaning crew members. (Cooper Depo. at p. 220, attached as Ex. 8 to Def.'s CSF, ECF No. 344-10; Hasley Depo. at p. 248, attached as Ex. 11 to Def.'s CSF, ECF No. 344-13; Gervacio Depo. at p. 122, attached as Ex. 13 to Def.'s CSF, ECF No. 344-15; Hawley Depo. at p. 159, attached as Ex. 15 to Def.'s CSF, ECF No. 344-17).

Plaintiff argues that even though the Vigor Defendants were not the vessel owner, nor her employer, she believes they should be held responsible for her injuries. Plaintiff has not put forward evidence to demonstrate that the Vigor Defendants retained significant control of the safety aspects of Plaintiff's

24

job such that they owed Plaintiff a duty of care pursuant to
Nelson and the Restatement (Second) of Torts.

There is no evidence in the record that the Vigor Defendants
controlled Plaintiff's employment or retained significant control
over the cleaning work in the Front Stack repair containment.
Plaintiff merely makes conclusory statements that the Vigor
Defendants owed her a duty of care, that they were responsible
for her safety, and that the should have controlled the vacuum
that Subcontractor IMIA owned.

### 1.    The Prime Contract Does Not Create A Duty Of Care To Plaintiff

Plaintiff points to general contract language in the Prime
Contract between the United States and Vigor Marine LLC that
Vigor was "responsible for all contracted and sub-contracted
labor...." (Prime Contract at p. 16, ECF No. 344-3).

As the Vigor Defendants argue, the language in the Prime
Contract and the contractual duties that the Vigor Defendants had
to the United States Navy do not create a legal tort duty to
Plaintiff. Plaintiff ignores the distinction between tort and
contract law. There are limited situations in which a tort duty
may arise out of a contract. Howard v. Hertz Corp., 2016 WL
316781, *8 (D. Haw. Jan. 25, 2016). Only a party to a contract
or an intended third-party beneficiary may sue to enforce the
terms of a contract, and Plaintiff was not an intended third-

party beneficiary of the Prime Contract.  See GECCMC 2005-C1
Plummer St. Off. Ltd. P'ship v. JP Morgan Chase Bank, Nat. Ass'n,
671 F.3d 1027, 1033 (9th Cir. 2012).

The burden is higher when it is a government contract
because "a party that benefits from a government contract is
presumed to be an incidental beneficiary, and that presumption
may not be overcome without showing a clear intent to the
contrary."  Caltex Plastics, Inc. v. Lockheed Martin Corp., 824
F.3d 1156, 1160 (9th Cir. 2016) (internal quotations and
citations omitted).

Plaintiff has not demonstrated that the Prime Contract
granted her enforceable rights against the Vigor Defendants.
Orff v. United States, 358 F.3d 1137, 1147 (9th Cir. 2004).  The
Prime Contract does not create a duty of care between the Vigor
Defendants and Plaintiff.  See Marable v. United States, 2017 WL
6541021, *6 (S.D. Cal. Dec. 2017) (finding the plaintiff worker
failed to demonstrate that the prime contract between the
government and the general contractor created a contractual duty
of care to him as the employee of an independent contractor).

> **2.    There Is No Evidence That The Vigor Defendants Had
> Significant Involvement In The Safety Of The
> Forward Stack Repair**

Plaintiff argues that the Vigor Defendants had the ability
to oversee safety at the job site and had the authority to stop

work if they found there was a safety hazard.  Plaintiff,
however, has provided no evidence of "significant involvement" by
the Vigor Defendants in the safety of the Forward Stack
refurbishment that was being conducted by Subcontractor IMIA.

The right to inspect, supervise, or stop work alone does not
demonstrate significant involvement in the safety as required to
demonstrate that the Vigor Defendants had a duty of care to
Plaintiff.  See Kirk v. United States, 270 F.2d 110, 116-17 (9th
Cir. 1959) (finding that the fact that the hirer had the right to
inspect or stop work of its contractor and had the ability to see
that the provisions of the contract were carried out was not
sufficient to create liability between the hirer of the
independent contractor and the contractor's employee).

The Ninth Circuit Court of Appeals in Nelson held that
significant involvement or control of the subcontractor's work is
required in order to create a duty of care from the general
contractor to the subcontractor's employees.  Nelson, 639 F.2d at
478.  Plaintiff has not demonstrated that there was any actual
significant involvement or control.  To the contrary, the record
clearly reflects that the Vigor Defendants did not directly
communicate with Plaintiff, oversee her work, inspect her work,
ask her safety related questions about her work, and did not
control Subcontractor IMIA's use of employees or direct them as
to how Plaintiff should complete her job.

27

Plaintiff's reliance on general statements that the Vigor Defendants had the ability to control safety does not demonstrate that the Vigor Defendants actually were significantly involved in the safety of the Forward Stack containment.

**B.    There Is No Evidence That the Vigor Defendants' Actions Created An Aggravated Risk Of Hazard To Cause Plaintiff's Injury**

Pursuant to Nelson, a duty of care may exist between a hirer and the employee of an independent contractor if the hirer engaged in conduct that aggravated the job's danger that caused the employee's injury.  Nelson, 639 F.2d at 479.

Here, Plaintiff attempts to rely on Federal Occupational Safety and Health Administration regulations to argue that the Vigor Defendants owed her a duty of care.

Plaintiff's argument is misplaced.  The Ninth Circuit Court of Appeals has ruled that it is **employers** of workers who must ensure compliance with Federal OSHA regulations, not the hirer of independent contractors.  Ralston v. San Juan Excursions, Inc., 252 Fed. Appx. 180, 182 (9th Cir. 2007) (emphasis added); see also Cruz v. United States, 247 F.Supp.3d 1138, 1147 (S.D. Cal. 2017) (finding that non-employer contractor did not owe the injured plaintiff a duty of care in a federal maritime action based on OSHA violations because it was the employer who was responsible for the OSHA regulations, not the contractor).

28

The Ninth Circuit Court of Appeals has also found that a repair worker may not sue a third-party non-employer for negligence when he was injured performing the repair task his employer was hired to fix.  Peters v. Titan Nav. Co., 857 F.2d 1342, 1345 (9th Cir. 1988).  The Appellate Court reasoned that the plaintiff's proper remedy is for the employee to recover from his employer under the Longshore and Harbor Worker's Act and not to sue a third-party.  Id. at 1345 n.2.

Plaintiff has not put forward any evidence that the Vigor Defendants created any hazard with respect to the industrial vacuum that injured her.  The record is clear that it was Subcontractor IMIA's industrial vacuum that IMIA controlled, which caused her injury.  The Vigor Defendants did not purchase or own the vacuum.  There is no evidence that the Vigor Defendants controlled the vacuum, created any hazard with respect to the vacuum, or affirmatively contributed to the cause of Plaintiff's injury.

Plaintiff has not established an exception pursuant to Nelson to establish that the Vigor Defendants either retained significant control and involvement over the safety aspects of her job or that the Vigor Defendants' actions aggravated the risk that caused Plaintiff Cooper's injury.

Plaintiff has failed to establish as a matter of law that the Vigor Defendants owed her a duty of care to protect her from

29

harm from the industrial vacuum.  Plaintiff is unable to bring a general maritime law negligence cause of action against the Vigor Defendants for the injuries she sustained from using Subcontractor IMIA's industrial vacuum.

## CONCLUSION

Defendants Vigor Marine, LLC and Vigor Industrial, LLC's Motion for Summary Judgment (ECF No. 344) is **GRANTED.**

There are no remaining claims or parties in this action.

The Clerk of Court is **ORDERED** to enter Judgment in favor of Defendants Vigor Marine, LLC and Vigor Industrial, LLC and **CLOSE THE CASE.**

IT IS SO ORDERED.

Dated: September 4, 2025, Honolulu, Hawaii.



Helen Gillmor
United States District Judge

Ashely Cooper v. Vigor Marine, LLC; Vigor Industrial, LLC, Civ. No. 22-00275 HG-RT; **ORDER GRANTING DEFENDANTS VIGOR MARINE, LLC AND VIGOR INDUSTRIAL, LLC'S MOTION FOR SUMMARY JUDGMENT (ECF No. 344)**

30